UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | CRIMINAL NO. 17CR197SS |
| FAUSAT ADEKUNLE<br>Defendant | § § § § | |

## SECOND SUPERSEDING INDICTMENT

THE GRAND JURY CHARGES:

### A. INTRODUCTION

At all times material to this Indictment:

### THE MEDICARE PROGRAM

1. The Medicare program ("Medicare") was a federally funded health insurance program that provided health care benefits to certain individuals, including the elderly, blind, and disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS") an agency of the United States Department of Health and Human Services ("HHS"). Individuals who received benefits under Medicare were often referred to as Medicare "beneficiaries."

2. Medicare was a "health care benefit program" as defined by Title 18, United States Code, Section 24(b).

3. Medicare was comprised of four different parts. Medicare Parts A and B were applicable to this case. Medicare Part A, also known as hospital insurance, covered inpatient hospital care and home health care services. The Hospital Insurance Trust Fund paid for Medicare Part A benefits. The money deposited into the Medicare Trust Fund included payroll taxes from

employees, employers and self-employed people, funds authorized by congress, and premiums. The Trust Fund was held by the United States Treasury. Medicare Part B helps pay for physician services, outpatient hospital services, medical equipment and supplies, ambulance transportation services and other health care services and supplies. Services provided by home healthcare agencies ("HHA") to beneficiaries requiring services at home because of an illness or disability causing them to be homebound are covered by Medicare Part A. Payments for home healthcare services were typically made directly to the HHA, rather than to the beneficiaries receiving the services.

4. Physicians, clinics, and other healthcare providers, including HHAs that provided services to Medicare beneficiaries, were required to apply for a Medicare "provider number" in order to submit claims for payment. Each Medicare claim contained the beneficiary's name and Medicare identification number, the services that were performed for the beneficiary, the date the services were provided, the cost of the services, and the name and identification number of the physician or other healthcare provider that ordered or provided the services.

5. CMS did not directly pay Medicare Part A claims submitted by Medicare certified HHAs. CMS contracted with different companies to administer the Medicare Part A program throughout different parts of the United States.

6. The Medicare program paid for home health services only if the beneficiary qualified for home healthcare benefits. A patient qualified for home healthcare benefits only if:
   a. the patient was confined to the home, also referred to as homebound;
   b. the patient was under the care of a physician who specifically determined there was a need for home healthcare and established a Plan of Care ("POC"); and
   c. the determining physician signed a certification statement specifying that:

2

i. the beneficiary needed intermittent skilled nursing services, physical therapy, or speech therapy;

ii. the beneficiary was confined to the home;

iii. a POC for furnishing services was established and periodically reviewed; and

iv. the services were furnished while the beneficiary was under the care of the physician who established the POC.

7. Medicare regulations required HHAs providing services to Medicare patients to maintain complete and accurate medical records reflecting the medical assessment and diagnoses of their patients, as well as records documenting actual treatment of the patients to whom services were provided and for whom claims for payment were submitted by the HHA.

## THE DEFENDANT

8. FAUSAT ADEKUNLE, defendant herein, was a manager of Dayton Health Bridges, Inc. ("Dayton"), Advanced Holistic Healthcare Services, Inc. ("Advanced"), Access Practical Solutions DBA Access Home Care ("Access"), GetUpandWalk, Inc. ("GetUpandWalk"), and Guarranty Home Health Agency ("Guarranty"). FAUSAT ADEKUNLE was a resident of Houston in the Southern District of Texas.

### B. COUNT ONE
### Conspiracy to Commit Health Care Fraud
### (18 U.S.C. §1349)

## THE CONSPIRACY

9. Beginning in or about March, 2010 the exact time being unknown and continuing thereafter to in or about April, 2015, in the Houston Division of the Southern District of Texas and elsewhere, defendant

3

## FAUSAT ADEKUNLE

did knowingly, intentionally, and willfully combine, conspire, confederate and agree with other persons known and unknown to the grand jury to commit and aid and abet certain offenses against the United States; namely

   a. to knowingly and willfully execute and attempt to execute, a scheme and artifice: (1) to defraud a health care benefit program; namely the Medicare and Medicaid program; and (2) to obtain, by means of material false and fraudulent pretenses, representations, and promises, money and property owned by, or under the custody and control of, the health care benefit programs; in connection with the delivery of and payment for health care benefits, items and services, in violation of Title 18, United State Code Section 1347.

## **OBJECT OF THE CONSPIRACY**

10. The objective of the conspiracy was to unlawfully enrich the defendant by submitting false and fraudulent claims to Medicare for home health services and procedures that were not ordered by physicians as medically necessary; and that were not provided to Medicare beneficiaries as billed.

## **MANNER AND MEANS**

The manner and means of the conspiracy included but was not limited to the following:

11. Defendant FAUSAT ADEKUNLE was the manager of Dayton, Advanced, Access, Guarranty, and GetUpandWalk.

12. Defendant FAUSAT ADEKUNLE and Oluyemisi Amos and Felix Amos would and did bill Medicare on behalf of Dayton for services to beneficiaries that the beneficiaries did not receive.

4

13. Defendant FAUSAT ADEKUNLE and Oluyemisi Amos and Felix Amos would and did submit claims to Medicare on behalf of Advanced that indicated physicians ordered services when the physicians did not.

14. Defendant FAUSAT ADEKUNLE and Oluyemisi Amos and Felix Amos would and did bill Medicare for Advanced for services to beneficiaries that the beneficiaries did not receive.

15. Defendant FAUSAT ADEKUNLE and Oluyemisi Amos would and did submit claims to Medicare through GetUpandWalk that indicated physicians ordered services when they did not.

16. Defendant FAUSAT ADEKUNLE and Oluyemisi Amos would and did bill Medicare through GetUpandWalk for services that were not provided.

17. Defendant FAUSAT ADEKUNLE and Oluyemisi Amos would and did submit to Medicare for GetUpandWalk over $7 million in claims for services that were not ordered or not medically necessary and received over $7 million into GetUpandWalk's Bank of America account *2871.

18. Defendant FAUSAT ADEKUNLE and Oluyemisi Amos would and did indicate to Medicare that physicians signed off on home health services for Access when the physicians did not.

19. Defendant FAUSAT ADEKUNLE and Oluyemisi Amos would and did bill Medicare for beneficiaries who never received home health services from Access.

20. Defendant FAUSAT ADEKUNLE and Oluyemisi Amos would and did cause Medicare to be billed for services through Access exceeding $7 million, which were not performed or were not medically necessary.

21. Defendant FAUSAT ADEKUNLE would and did having signing authority on Guaranty's J.P. Morgan Chase account number *9621.

22. Defendant FAUSAT ADEKUNLE and Oluyemisi Amos would and did receive approximately $2,700,000 from Medicare payments deposited into Guarranty's J.P. Morgan Chase account number *9621.

23. Defendant FAUSAT ADEKUNLE and Oluyemisi Amos would and did bill Medicare for services from Guarranty for services allegedly rendered before Oluyemisi Amos owned Guarranty.

24. Defendant FAUSAT ADEKUNLE and Oluyemisi Amos would and did represent to Medicare that physicians had certified beneficiaries for home health services to Guarranty when the physicians had not done so.

25. Defendant FAUSAT ADEKUNLE and Oluyemisi Amos would and did bill for beneficiaries who never received home health services from Guarranty.

26. Defendant FAUSAT ADEKUNLE and Oluyemisi Amos would and did cause Medicare to be billed for services through Guarranty exceeding $2,700,000.00, which services were not performed or were not medically necessary.

### C. COUNTS TWO THROUGH SIXTEEN
**Health Care Fraud**
**(18 U.S.C. § 1347)**

### Introduction

At all times material to this Second Superseding Indictment:

27. Paragraphs 1 through 8 of this Second Superseding Indictment are realleged and incorporated as though fully set forth therein.

28. Beginning in or about February, 2011 defendant FAUSAT ADEKUNLE and Oluyemisi Amos and Felix Amos caused to be billed, and aided and abetted the billing of, Medicare, for services

which were either not performed or were not medically necessary. As a result of this unlawful scheme, Medicare paid in excess of $25,000,000 based on the false and fraudulent claims.

### A. Purpose of the Scheme to Defraud

29. It was a purpose of the scheme to defraud that the defendant and others known and unknown to the Grand Jury unlawfully enrich themselves by falsely and fraudulently representing to Medicare that certain services and procedures were performed for Medicare beneficiaries when in fact the defendants knew the services and procedures were not being performed.

### B. Manner and Means

30. The Grand Jury re-alleges and incorporates by reference as if fully alleged herein the Manner and Means alleged in paragraphs 11 through 26 of Count One of this Second Superseding Indictment.

### C. Health Care Fraud

31. Beginning in or about March 2010, and continuing thereafter to in or about April, 2015, in the Houston Division of the Southern District of Texas and elsewhere, defendant

**FAUSAT ADEKUNLE**

aided and abetted by others known and unknown to the grand jury, did knowingly and willfully execute and attempt to execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain by means of material, false and fraudulent pretenses, representations, and promises, any of the money and property owned by, and under the custody and control of, a health care benefit program in connection with the delivery of and payment for health care benefits, items, and services, to wit; on or about the below listed dates, the defendants listed caused to be submitted false and fraudulent claims to Medicare:

7

| Count | Patient Initials | Claim Number | Approx. Date of Claim | Approx. Date of Service | Approx. Amount Billed | Approx. Amount Paid | Nature of the Falsity included but not limited to |
|---|---|---|---|---|---|---|---|
| 2 | L.J. | 21507200012304TXR | 3/13/2015 | 11/27/2014 | $3,183.98 | $3,183.98 | Services not provided |
| 3 | L.J. | 21507200012004TXR | 3/13/2015 | 9/28/2014 | $3,820.77 | $3,820.77 | Services not provided |
| 4 | J.W. | 21423900023804TXR | 8/27/2014 | 3/2/2014 | $3,820.77 | $3,820.77 | Services not provided |
| 5 | P.L. | 21429001013604TXR | 10/17/2014 | 7/10/2014 | $3,237.12 | $3,237.12 | Services not provided |
| 6 | P.L. | 21428400154104TXR | 10/11/2014 | 7/9/2014 | $2,697.60 | $2,697.60 | Services not provided |
| 7 | A.H. | 21223800284504TXR | 8/25/2012 | 2/5/2012 | $2,832.28 | $2,832.28 | Services not provided |
| 8 | L.A. | 21505701412404TXR | 2/26/2015 | 7/20/2014 | $3,820.77 | $3,820.77 | Services not provided |
| 9 | L.A. | 21425600002704TXR | 9/13/2014 | 5/10/2014 | $3,820.77 | $3,820.77 | Services not provided |
| 10 | E.B. | 21505800066504TXR | 2/27/2015 | 7/5/2014 | $3,820.77 | $3,820.77 | Services not provided |
| 11 | E.B. | 21425801668404TXR | | 10/20/2013 | $3,838.19 | $3,838.19 | Services not provided |

|    |      |                   | 9/15/2014  |           |           |           |                          |
|----|------|-------------------|------------|-----------|-----------|-----------|--------------------------|
| 12 | R.L. | 21428400155504TXR | 10/11/2014 | 5/9/2014  | $3,237.12 | $3,237.12 | Services not provided    |
| 13 | B.M. | 21506301134204TXR | 3/4/2015   | 7/4/2014  | $3,820.77 | $3,820.77 | Services not provided    |
| 14 | B.M. | 21506301136704TXR | 3/4/2015   | 9/2/2014  | $3,183.98 | $3,183.98 | Services not provided    |
| 15 | H.G. | 21309301662304TXR | 4/3/2013   | 4/12/2012 | $3,767.62 | $3,767.62 | Services not provided    |
| 16 | H.G. | 21309301633204TXR | 4/3/2013   | 6/11/2012 | $3,139.69 | $3,139.69 | Services not provided    |

All in violation of Title 18, United States Code, Sections 1347 and 2.

## COUNT SEVENTEEN
**Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity**
**(18 U.S.C. § 1957)**

32. On or about the dates set forth below, in the Houston Division of the Southern District of Texas and elsewhere, the defendant,

**FAUSAT ADEKUNLE**

9

aided and abetted by others, known and unknown, did knowingly engage and attempt to engage in monetary transactions by, through, or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, that is health care fraud in violation of Title 18, United States Code, Section 1347, as follows:

| COUNT | DATE | MONETARY TRANSACTION |
|---|---|---|
| 17 | 3/6/2015 | Cashier's Check in the amount of $49,836.37 paid to Land Rover Jaguar Houston Central. |

All in violation of Title 18, United State Code, Sections 1957 and 2.

## COUNTS EIGHTEEN THROUGH NINETEEN
### Wire Fraud
### (18 U.S.C. §1343)

33. Paragraphs 1 through 8 of this Second Superseding Indictment are hereby incorporated by reference as though fully set forth herein.

34. From at least September 13, 2014 to on or about February 26, 2015, in the Southern District of Texas and elsewhere, the defendant,

**FAUSAT ADEKUNLE**

knowingly devised and intended to devise, a scheme to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

### MANNER AND MEANS

35. The Grand Jury re-alleges and incorporates by reference as if fully alleged herein the Manner and Means alleged in paragraphs 11 through 26 of Count One of this Second Superseding Indictment.

## EXECUTION OF THE SCHEME

36. On or about the dates listed below, in the Southern District of Texas and elsewhere, for the purpose of executing the above-described scheme to defraud and to obtain money by materially false and fraudulent pretenses, representations, and promises, the defendant, **FAUSAT ADEKUNLE**, transmitted and caused to be transmitted by means of wire communication in and affecting interstate commerce, the following writings, signals, and sounds, described below for each count:

| COUNT | DATE | TRANSMISSION DESCRIPTION |
|---|---|---|
| 18 | 2/26/2015 | Wire payment from Medicare in the amount of $155,879.25 into JP Morgan Chase bank account ending in *9621 held in the name of Guarranty Home Health Agency, Inc. |
| 19 | 3/20/2015 | Wire payment from Medicare in the amount of $191,488.56 into JP Morgan Chase bank account ending in *9621 held in the name of Guarranty Home Health Agency, Inc. |

All in violation of Title 18, United States Code, Section 1343.

## NOTICE OF FORFEITURE
### (18 U.S.C. § 982(a)(7))

37. Pursuant to Title 18, United States Code, Section 982(a)(7), the United States gives notice to the defendant,

**FAUSAT ADEKUNLE,**

that upon conviction for a violation of Title 18, United States Code, Section 1349 or a violation of Title 18, United States Code, Sections 1343 or 1347, all property, real and personal, which

constitutes or is derived, directly or indirectly, from gross proceeds traceable to such offenses, is subject to forfeiture.

## NOTICE OF FORFEITURE
## (18 U.S.C. § 982(a)(1))

38. Pursuant to Title 18, United States Code, Section 982(a)(1), the United States gives notice to the defendant,

**FAUSAT ADEKUNLE,**

that upon conviction for a violation of Title 18, United States Code, Section 1957, all property, real or personal, involved in money laundering offenses or traceable to such property, is subject to forfeiture.

### Money Judgment

39. Defendant is notified that upon conviction, a money judgment may be imposed equal to the total value of the property subject to forfeiture.

### Substitute Assets

40. Defendant is notified that in the event that one or more conditions listed in Title 21, United States Code, Section 853(p) exists, the United States will seek to forfeit any other property of the defendant up to the total value of the property subject to forfeiture.

Original Signature on File

ORIGINAL SIGNATURE ON FILE
FOREPERSON

RYAN K. PATRICK
UNITED STATES ATTORNEY

By: _____
Rodolfo Ramirez
Assistant United States Attorney